SOMMERVILLE, J.
Plaintiff, in her individual capacity, as widow, sues the defendant for $15,000 damages for the loss and death of her husband, through the alleged fault and negligence of the defendant company. She instituted a second suit, based on the same cause of action, as tutrix of her minor children, claiming $15,000 for each of the three children for the loss of their father. There was judgment in favor of plaintiff, as widow, in the sum of $3,000, and also a judgment in her favor, as tutrix, for the further sum of $3,000. Defendant has appealed, and plaintiff has answered the appeal and asks that both judgments be increased from $3,000 to $7,500. The two cases were tried at one time, on the same evidence; and there is but one transcript of appeal.
Plaintiff alleges that the defendant was engaged in converting a sailing vessel into an oil barge, in the Mississippi river, in the port of New Orleans; that it employed her husband to operate an oxy-aeetyléne gas engine stationed on the deck of said vessel; that it was his duty, in operating said en.gine, to see that there was an adequate supply of gas furnished to workmen in the hold who were engaged on ironwork, to observe the gauges on said engine, and to receive signals from the foreman and workmen in the hold; that, while he was performing the duties assigned to him, a laborer, who was working on the deck of said vessel, removing an iron bar, or davit, measuring about 8 feet in length, and about 1% inches in diameter, carelessly and negligently permitted said iron bar to fall and strike plaintiff’s husband, which knocked him into the hold of the vessel through a hole on the deck, and injured him to such an extent as to cause his death within 56 hours thereafter. She alleges that the ribs of her husband were fractured, that he received a lacerated wound of the scalp, and general contusions.
She further alleges that the workman who caused the accident was inexperienced, but she failed to prove this allegation. She alleged and proved that defendant’s employé, who inflicted the injury upon her husband, was grossly negligent in removing said davit, *1059 and that the injury was the direct cause of his death.
[1] Defendant answered admitting that it was engaged in the converting of a sailing vessel into an oil barge, and that it had engaged the deceased in this extrahazardous work, and alleged that he had assumed the risks incidental thereto, that he had been assigned a safe place in which to work, and that he had left such place without permission, or for any sufficient reason, and contrary to instructions; that if the injury to Code was due to the fault of the employs Schneider, who took the davit down, then it was through the fault of a fellow servant, for which it is not responsible. It denies fault or negligence.
The evidence shows that, while Schneider had had experience in the line of work in which he was engaged, he had never before removed a davit; he was working with saw, maul, and chisel; and he had sawed into the deck of the vessel for the purpose of loosening the lower end of the davit; that he struck the sawed woodwork with the maul after it was loose, and the davit fell on Code and injured him. The evidence further shows that Schneider did not give any warning to Code, the deceased, that the davit was about to fall, or for him to get out of the way. He says that he did not know how the davit would fall, or that Code was near enough to be struck. Schneider says that Code should have been at his machine, attending to his business, and that the davit would not have then hit him; that Code had walked away from his machine, without any reason therefor, and had left a safe place for one of danger.
The foreman of the defendant company testified that the deceased was employed to operate the gas machine, or oxy-acetylene tank, as he chose to call it; that his duties were to watch the gauge.; “when the machine was empty, to charge it — to put nothing over 50 pounds of carbide in it.” He further testified that it was the duty of Code to supply gas to the workmen in the hold of the vessel, who were engaged in working on iron down there, and who required heat for the purpose.
The evidence shows that the deceased moved only a short distance from the machine that he was operating, and that the gauges were large enough for him to see them at such distance. The foreman testified that:
“A man will move away from his work at times.” “You can’t keep no man standing exactly watching that there. You can tell him one hundred times a day not to move, and he will move anyhow.” “It is a natural thing for a man to move, to move around while on the job.” “He didn’t have to stand exactly in one spot. He could take a step like this (indicating) from his gauges, but he did not have to go away from his gauges.”
And Code is not shown to have moved any . appreciable distance from the engine he was operating, and it was only reasonable to expect that he would move a short distance from it, and not stand in one spot all the time. He cannot be charged with fault because of having moved a short distance from the machine.
As Code was employed to operate this oxyacetylene gas machine, he cannot be held to have been a fellow servant with the laborer who was engaged in taking down the davit.
In Merritt v. Victoria Lumber Co., Ill La. 159, 35 South. 497, it is held:
“(1) When servants are engaged in different duties in the same establishment, and injury resulting to one by the carelessness or negligence of another, in the course of the latter’s peculiar work, does not fall within the rule which exempts the master from liability by reason of a fellow servant’s negligence.
“To bring a case within the exception (exemption of master from liability), this material fact must appear, that the servants engaged, one of whom is injured or killed, must be men in the same common employment, and engaged in the same common work under that common employment.”
And in Levins v. Bancroft, Ross & Sinclair, 114 La. 105, 38 South. 72, it is held:
*1061 “(7) The fellow workman’s doctrine is not in the case. The employé was working in a different department.”
“Employés in a sawmill who are not associated in the same work are not fellow servants.
“The master, except in case of fellow servants, is answerable for the damage occasioned by his servants and overseers in the exercise of the functions in which they are employed.” C. C. art. 2320.
“Where the negligent act of the servant caused injury, it is no defense that the particular injurious consequence was unforseen, improbable, or not to be reasonably expected, if it was the natural sequence of the act itself.
“Even in case of fellow servants, the master is liable when his own negligence contributed to the injury, as where an employé in a sawmill carelessly pitched a shovel, which, rebounding, struck and released an unsafe wooden latch holding the lever which controlled the operation of the carriage.” Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475.
“Under the settled jurisprudence of this state, a master is liable in damages to one servant, injured through the negligence of another servant in the performance of different work, under their common employment.” Taylor v. E. C. Palmer & Co., Ltd., 124 La. 531, 50 South. 522.
“The rule is déducible that those who are employed by a common master in a common employment, engaged in the same work, and in the same department of service, are fellow servants of each other.” Wilkinson on Personal Injuries, p. 135.
There was no relation or interassociation between Schneider and Code in the work they were doing on the boat; they were working in different departments.
It may well be that the manner in which the laborer proceeded to take down the davit was a reasonably safe one, and the ordinary one pursued under such circumstances; but the evidence clearly shows that he was negligent in carrying out the work, and that it was through his fault that the accident happened to the deceased. He should have warned the deceased of the falling of the davit, and he should have been certain that it would have fallen in a direction away from the deceased.
It may also have been that the work in which defendant was engaged was extrahazardous, and that the persons working under it assumed greater risks than are ordinarily assumed by workmen; but, when it is shown that injury and damage have resulted from carelessness and negligence, a workman cannot be said to have assumed such risk. Under such circumstances, the fault is with the employer or his employé, for which the employer is responsible.
[2, 3] Respondent admits that on the day of the accident practically all the superstructure on the vessel had been removed, that is, almost all the woodwork on the upper deck, and that at the time of the accident to Code defendant was removing the balance of said woodwork. And it was testified that the only thing standing to be removed on the deck of the vessel was the davit which was being removed at the time of Code’s death. So that the work at the time of the accident cannot be said to have been extrahazardous.
“Unless the danger be obvious, the defenses of assumption of risk and contributory negligence have no application, where an injured employé was engaged at the time in the performance of his work in the usual manner.”' Collins v. Krause-Managan Lumber Co., 136 La. 303, 67 South. 12.
The servant assumes the risks of such hazards as are entirely incidental to an employment intelligently undertaken, and those only. Roff v. Summit, 119 La. 572, 44 South. 302.
The contributory negligence pleaded by defendant has been noted before in connection with Code removing from a place of safety to one of danger.
“We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.” C. C. 2317.
[4] The deceased was a man in good health, and of good habits, aged 45 years, in regular employment, and the sole support of his wife and children. His sufferings, before. his-death, extended through some 56 hours; and for -these sufferings, and the resulting loss to-them, the widow and three children asked for *1063 judgment in the sum of $15,000 each; now they ask that the judgment appealed from be amended so that they will receive $15,000 altogether. The district judge allowed the' widow $3,000, and a similar amount to the three children. We are of the opinion that the amount allowed is too small, and that it should be increased to $6,000 for the widow and a like amount for the three children.
It is therefore ordered, adjudged, and decreed that the two judgments appealed from be amended, and that the one in favor of the widow be increased to $6,000 and that the one in favor of the widow, as natural tutrix of her three minor children, be increased to $6,000, and that as thus amended the judgments are affirmed, costs to be paid by defendant.
O’NIELL, J., dissents.