O’NIELL, J.
The plaintiff sued for $37,500 damages for personal injuries suffered while in the employ of the defendant company. Judgment was rendered in his favor for $14,000, from which the defendant prosecutes this appeal. The plaintiff has answered the appeal, praying that the judgment be increased to $20,000.
The accident happened at a log skidder owned and operated by the defendant company. The plaintiff was employed as a machinist or general utility man, whose duties were to keep the machinery in repair, and perhaps to take the place of any operator who might have to be relieved of his work. He also delivered to the members of the crew orders issued by the foreman of the skidder. While he was delivering to the fireman an order issued by the foreman, an employe named William Brown, known as the decker, whose duty it was to place the logs in a pile or deck beside the railroad track on which the skidder was operated, caused one of the logs to be thrown upon the plaintiff and the fireman, injuring the plaintiff seriously.
The allegations of fault and negligence are that the work of the deeker required that he be a man of experience, skill, and prudence; that the performance of the duties required of a decker, when attempted by an unskilled, inexperienced, or imprudent man, subjected to great danger the lives of the other employés at the skidder; that the defendant’s foreman in charge of the skidder operations knew, when he employed William Brown as a decker, that the man was unskilled, inexperienced, and incompetent; that Brown had only been working as a decker about a week when his incompetency and recklessness caused the accident; that during that week several employés about the skidder complained to the foreman that Brown was incompetent and reckless and that his incompetency and recklessness in the manner of piling or decking the logs was dangerous to the other employés; that the foreman saw and knew that Brown was an incompetent, reckless, and dangerous operator, and frequently complained to him of his reckless and dangerous manner of doing the work, but kept him at the employment at the risk of the lives of the other employés. The plaintiff alleged in his petition that he did not know and had had no opportunity of knowing that Brown had had no previous experience as a decker or was unskilled or incompetent.
The answer of the defendant company is that it did not require any training or experience or special skill to do the work of a log decker, at which Brown was employed; that the plaintiff was at the time of the accident employed as assistant to the foreman of the skidder, and was therefore charged with knowledge of Brown’s incompeteney, if he was incompetent, to do the work safely; that at the time of the accident the plaintiff had negligently and without notice to his fellow servants left his post of duty and assumed a place of danger; that, if he had remained at his post of duty where his fellow employés believed *761 and had a right to assume he would be, he would not have been injured; that the injuries he suffered were occasioned by his own negligence and by that of his fellow servants engaged in the same employment, and were not due to any fault or negligence on the part of any one for whose fault or negligence the defendant company was responsible. The defendant admitted that the plaintiff was injured while he was employed by the defendant company, but denied the dxtent of the injury alleged. In the assignment of errors filed in this court the appellant complains: First, that the plaintiff’s demand should have been rejected entirely because of the defenses set forth in the answer; and, second, that, if the judgment should not be reversed, it should be amended by reducing the amount to a sum not exceeding $7,500. .
The evidence shows, and it is not contradicted, that the injury to the plaintiff was caused by the gross negligence of Brown in the performance of the work at which he was employed. A log that was unfit either for lumber or fuel had been skidded from the woods to the log pile or deck which Brown, was building up. One end of the log was upon the deck or pile of logs, and the other end, pointing towards the skidder, rested on the ground. Brown passed a steel cable, from the drum under the log and attached the end to a log in the deck. He then signaled the man who operated the steam drum to give the cable a quick jerk, intending to throw or “kick” the worthless log over the log deck towards the woods. But he had placed the cable at the wrong end of the log, the effect of which was to throw it in a direction opposite that in which he intended it to go. It fell upon the plaintiff and the fireman, who were in a position of safety as long as the decker attended to his business properly, but who could not see or escape the falling log.
The evidence shows that the duties of a decker required some skill and much care and prudence on his part to avoid danger to the other employés about the skidder. He directed the hoisting of the logs and the placing of them properly in the log deck, by showing the men who handled the tongs on the end of the cable where to attach them to the logs, and by signaling ’ to the man who operated the levers that controlled the steam drums when and at what speed to hoist or lower the logs.
Brown had applied for a position as fireman at the skidder. The foreman, believing he would soon need a fireman, but not needing one at that time, put Brown to work temporarily as log decker. Brown told the foreman that he had had no experience at decking logs, but accepted the position with the hope of getting the position of fireman later. During the week in which he was employed before the accident he proved to be utterly incompetent, ignorant of the duties required of him, and incapable of learning. His recklessness in the manner of handling the cables, giving the wrong signals to the drum man, or giving them at the wrong time, was a menace to the men who handled the tongs, and they frequently complained to the foreman. The latter realized that Brown was an incompetent and unsafe decker, and threatened to discharge him, but kept him on the job, believing he would soon be needed as a fireman.
The evidence does not sustain the allegation that the pldintiff knew or was charged with knowledge of Brown’s incompetency as a log decker. The proof is conclusive that the plaintiff was not an assistant foreman, and had no authority whatever over any other member of the skidder crew. The foreman left him in charge of the skidder operations one day, when the foreman was absent, but Brown was not employed there then.
The plaintiff was employed as a machinist. He is referred to in the testimony as the general utility man, whose.duty it was to repair any part of the machinery or equip *763 ment connected with the skidder that might get out of order. There was nothing in common between his and Brown’s work or duties. He was neither the superior nor the fellow servant of Brown; hence the plaintiff was not charged with knowledge of Brown’s incompetency, nor did he assume the risk of Brown’s negligence. See Merritt v. Victoria Lumber Co., 111 La. 159, 35 South. 497; Levins v. Bancroft, Ross & Sinclair, 114 La. 105, 38 South. 72; Taylor v. E. C. Palmer & Co., 124 La. 531, 50 South. 522; Wirth v. Alex Dussel Iron Works (No. 21386) 74 South. 551, 140 La. 1056.
[1, 2] The evidence does not support the defendant’s allegation that the plaintiff was guilty of negligence. He had not left his post of duty, as alleged by the defendant, but was in the discharge of his duties at the time of the accident, at a place to which his duties called him and which he had a right to assume was a safe place.
The master is liable in damages for personal injuries inflicted upon his servant by the incompetency and negligence of another servant, in the performance of the work at which the latter was employed, if the master knew of the incompetency of the negligent servant before and during his employment, and the injured employs was neither the superior nor the fellow servant of the negligent one.
[3] Our opinion is that the amount of the judgment is not excessive. The plaintiff’s backbone or spinal column was broken. Besides the fracture of one of the dorsal vertebral, there is a permanent displacement of one of the bones of the spinal column, the effect of which has been to disarrange and partly disconnect the nerve system extending to the lower part of the body. The plaintiff’s left leg is totally paralyzed, and his right leg partially so. He has a spinal curvature or humpback that can never be cured. The surgeons who testified in the case described his condition as that of a helpless cripple, a semi-invalid, whose condition can never be improved and will probably grow gradually worse. He was a skilled mechanic, only 36 years of age, and of sound physique before the accident. As the trial judge was in a better position to determine the extent of the injury than we are, we are not disposed to increase the amount of the judgment.
The judgment appealed from is affirmed at the cost of the appellant.